618 So.2d 899 (1993)
BRITT BUILDERS, INC.
v.
Maureen Johnson BRISTER.
No. 92 CA 1586.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
*900 H. Matthew Chambers, Baton Rouge, for plaintiff-appellee Britt Builders, Inc.
George K. Anding, Jr., Baton Rouge, for defendant-appellant Maureen Johnson Brister.
Before WATKINS and SHORTESS, JJ., and CHIASSON[*] J. Pro. Tem.
REMY CHIASSON, Judge Pro. Tem.
This is a devolutive appeal from a judgment denying claims for continuing trespass on a reconventional demand. The trial court rendered judgment in favor of the defendant/plaintiff in reconvention, Maureen Brister, and against the plaintiff/defendant in reconvention, James D. Britt. The trial court further dismissed Britt's main demand and ordered that he pay Ms. Brister $3,500 for damage to her property. Ms. Brister filed this appeal.

FACTS
Maureen Johnson Brister bought Lot 201 of Woodlands Subdivision, Baton Rouge, Louisiana, on March 1, 1984. Title to the lot was recorded on March 2, 1984. Ms. Brister bought this lot because it had an unusual shape and a large oak tree. She financed this purchase by paying $5,000 down and promised to pay $251.22 a month for ten years. Total purchase price of the lot was $20,500. On June 25, 1984, Britt Builders, Inc., a Louisiana corporation owned by James Britt, entered into a purchase agreement for Lot 201 with Five L Development Corporation, the same company that sold the lot to Ms. Brister. A title search was conducted by H. Matthew Chambers who did not discover that the lot was owned by Ms. Brister. Soon after Britt was told that the title was clear, he removed the large oak tree, poured a concrete slab for a residence, and began framing the walls. Cost of this work was $10,179.76.
On July 10, 1984, Britt first learned that Ms. Brister owned the lot. Ms. Brister was immediately contacted, all work on the lot was stopped, and negotiations began to mitigate damages. Two weeks later Britt filed suit against Ms. Brister seeking $12,000 in damages for the enhanced value to her lot. She answered and filed a reconventional demand, seeking damages associated with the cost of her lot, damages for trespass, mental anguish, and attorney's fees.
Trial was held on May 24, 1991. At trial several experts in real estate appraisal testified. Marvin R. McDaniel, II said that a treed lot should bring $2,000 to $2,500 more than an untreed lot. He estimated that the cost of removing the concrete slab was $8,000 to $10,000 and the lot had a present value of $14,000 to $15,000 with the slab on it. He said that anyone purchasing the lot and planning to use the slab would have the problem of no warranty *901 and few people would want the lot with a slab on it.
Jim Wilson, a general contractor, testified that he gave Ms. Brister an estimate of $9,168 to remove the slab. He said that there was no salvage value to the slab and the job would require use of four or five trucks all day to remove the debris.
H. Matthew Chambers, the real estate lawyer who did the title search for Britt, said that he was hired June 20, 1984, to close the sale. He stated that a week to two weeks after he said the title was clear, he learned that Ms. Brister, and not the corporation which sold the lot to Britt, was the owner of Lot 201.
James Britt was accepted by the court as an expert in residential construction. He testified that he started building homes in 1965. He said that he did not know about the defect in the title before he began construction and he spent $400 to $500 to have the tree removed. He added that he bought the lot next to 201 hoping to negotiate a settlement and he was paid $8,816 by Chambers for the materials used in constructing the slab on Ms. Brister's lot.
Maureen Brister was the last witness. She said she had financed the purchase of the lot and she selected this lot because it was pie-shaped, on a curve, and had a large tree which she envisioned next to her bedroom. She and her family had prepared the lot for construction by cutting down five trees, hauling off debris, and mowing the grass. She had spent $1,630 clearing the lot. She said that she had spent the last seven years having to keep the lot clear because of liability and complaints by her neighbors. She also stated that she had no idea that construction began on her lot until Chambers told her, that she had asked Britt to remove the slab, and she could not understand why Britt was suing her for something he had put on her property. She claimed that her life has been on hold waiting for a resolution of her damages.
The court dismissed Britt's demands for $12,000 and assigned him costs of the trial. On the reconventional demand, the court awarded Ms. Brister $3,500, plus legal interest, for the destruction of the tree and clean-up of the lot. From that decision, Ms. Brister filed this appeal.

DETERMINATION OF GOOD FAITH POSSESSION AND FAILURE TO AWARD FULL MEASURE OF DAMAGES FOR TRESPASS

(Assignments of error numbers 1, 2 and 3)
Ms. Brister argues that the court erred when it determined that Britt was a good faith possessor when he constructed the slab on her lot. She contends that she should not be fully precluded from her damages in trespass because these damages resulted solely from Britt's actions. She maintains that the construction of the slab on her lot, removal of the tree, and placement of debris and construction materials by Britt constituted legal trespass.
In his brief to this court Britt argues that he was in good faith when he bought Lot 201 and began construction. He contends that he enhanced the value of the lot by constructing $12,000 worth of improvements on it and he should be entitled to restitution for these improvements. However, this Court cannot consider changing the trial court's ruling against Britt because he neither appealed nor answered Ms. Brister's appeal. See La.C.C.P. art. 2133; Lamousin v. Ankesheiln, 560 So.2d 459, 461 (La.App. 1st Cir.1990).
Possession is the detention or enjoyment of a corporeal thing, movable and immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name. La.C.C. art. 3421. A possessor is considered provisionally as owner of the thing he possesses until the right of the true owner is established. La.C.C. art. 3423. To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. La.C.C. art. 3424. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La.C.C. art. 3425.
One is presumed to intend to possess as owner unless he began to possess in the name of and for another. La.C.C. art. *902 3427. Possession is lost when the possessor manifests his intention to abandon it or when he is evicted by another by force or usurpation. La.C.C. art. 3433. Good faith is presumed. Neither error of fact nor error of law defeats this presumption. This presumption is rebutted on proof that the possessor knows, or should know, that he is not owner of the thing he possesses. La.C.C. art. 3481.
Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent. La.C.C. art. 493. When constructions, plantings, or works are made by a possessor in good faith, the owner of the immovable may not demand their demolition and removal. He is bound to keep them and at his option to pay to the possessor either the cost of the materials and of the workmanship, or their current value, or the enhanced value of the immovable. La.C.C. art. 496.
When constructions, plantings, or works are made by a bad faith possessor, the owner of the immovable may keep them or he may demand their demolition and removal at the expense of the possessor, and, in addition, damages for the injury that he may have sustained. If he does not demand demolition and removal, he is bound to pay at his option either the current value of the materials and of the workmanship of the separable improvements that he has kept or the enhanced value of the immovable. La.C.C. art. 497.
In his ruling the trial court determined that Britt was a good faith possessor in light of Phillips v. Parker, 483 So.2d 972 (La.1986) and that Civil Code Article 496 governed the outcome concerning the slab. By so ruling, the court concluded that Ms. Brister would have been bound to pay, at her option, either the cost of the materials and of the workmanship, or their current value, or the enhanced value of her immovable. However, because Britt failed to present adequate proof of the amounts, the court refused to award him damages under Article 496.
This Court agrees with the determination that Britt was a good faith possessor. In Phillips our Supreme Court held that good faith is presumed and when an erroneous title search is made, the possessor who relied on that search should not be precluded from the same status given a good faith possessor who conducts no search. Phillips v. Parker, 483 So.2d at 978-979. Britt was similarly situated when he placed reliance on a faulty title search and acted upon the advice of his attorney.
However, this Court's inquiry does not end simply because Britt was a good faith possessor under La.C.C. art. 496. The article itself speaks of enhanced value and Comment (c) to this article refers to improvements made to another's property. This comment states in pertinent part that all improvements made by a possessor in good faith on another's immovable belong to the owner of the immovable. The wording in both suggests that Article 496 is intended to apply to buildings, other constructions, and plantings that improve and enhance the value of an immovable. The article does not speak of partial constructions that actually diminish the value of an immovable.
In the instant case the record reveals that the only person likely to benefit from the slab was Britt. He poured the slab to fit the configuration of his house plans. For Ms. Brister and any potential buyer of the lot, it would be necessary to use an unwanted and unwarranted slab that has no utility until a house is built on it or else spend eight to ten thousand dollars to remove the slab. The testimony clearly established that the slab diminished the value of the lot.
Therefore, this Court believes that the redactors of our Civil Code envisioned application of Article 496 when the owner of the immovable would be unjustly enriched by the efforts of a good faith possessor. They did not intend that the owner be burdened with partial constructions and unwanted works on his property that actually diminished its value. Further recourse is *903 available to an owner in a situation such as this.
Article 2315 of the Civil Code provides in pertinent part that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. The tort of trespass has long been recognized by courts throughout this state as a means to correct the damage caused when an owner is unjustly deprived of the use and enjoyment of his immovable.
The tort of trespass is defined as the unlawful physical invasion of the property or possession of another. Dickie's Sportsman's Centers, Inc. v. Department of Transportation and Development, 477 So.2d 744, 750 (La.App. 1st Cir.), writ denied, 478 So.2d 530 (La.1985). A trespasser is one who goes upon the property of another without the other's consent. Williams v. J.B. Levert Land Company, Inc., 162 So.2d 53, 58 (La.App. 1st Cir.), writ refused, 245 La.1081, 162 So.2d 574 (La.1964).
A person injured by trespass is entitled to full indemnification for the damages caused. Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all of the facts and circumstances. Damages are recoverable even though the tort-feasor acts in good faith. Versai Management, Inc. v. Monticello Forest Products Corporation, 479 So.2d 477, 484 (La.App. 1st Cir.1985).
Damages for dispossession are regarded as an award of compensatory damages for violation of a recognized property right and are not confined to proof of actual pecuniary loss. Anguish, humiliation, and embarrassment are appropriate considerations. Owens v. Smith, 541 So.2d 950, 955 (La. App. 2nd Cir.1989). Damages are recoverable for unconsented activities performed on the property of another, based on physical property damage, invasion of privacy, inconvenience, and mental and physical suffering. Beacham v. Hardy Outdoor Advertising, Inc., 520 So.2d 1086, 1091 (La. App. 2nd Cir.1987).
In the instant case Britt did not dispute that he erected the concrete slab on Ms. Brister's property without her permission, nor does Britt claim to be owner of the property. Britt only occupied the lot as owner for two weeks, but the slab has remained on the lot seven years. Furthermore, the continued presence of the slab deprived Ms. Brister of the use and enjoyment of her property and diminished its value to her or other potential owners.
For the reasons herein stated, this Court concludes that under the circumstances of this case the trial court erred by determining that Article 496 of the Civil Code precluded full payment of damages resulting from a tort of trespass. Accordingly, the first and third assignments of error pertaining to trespass have merit.

QUANTUM
Ms. Brister claimed the following damages:

(1) Cost of removing the slab and repairing the lot $ 9,168.00
(2) Interest paid on lot loan 13,000.00
(3) Destruction of tree 2,500.00
(4) Out of pocket lot expenses 1,630.00
(5) Inconvenience, invasion of privacy, mental anguish and
 emotional trauma (7 years at $2,000.00 per year for the
 continuing nature of the trespass) 14,000.00
(6) Loss of use of down payment ($5,000.00) on lot loan for 7
 years at 6% per year 2,100.00
 ____________
TOTAL $42,398.00
 plus legal interest
 and court costs

*904 In his oral reasons for judgment, the trial judge awarded Ms. Brister damages of $1,000 for trespass for cleanup of materials left on her lot when Britt constructed another house and $2,500 for removal of the tree. These awards are affirmed. However, the court committed error when it denied Ms. Brister's claims for the continuing trespass caused by the slab remaining on her lot. Accordingly, Ms. Brister is awarded an additional $9,168 for the removal of the slab. No other damages were sufficiently proven in the record.

DECREE
For the foregoing reasons, the judgment of the trial court rejecting Ms. Britt's claim for the cost of removing the slab as a continuing trespass is reversed. The awards for $1,000 for cleanup of construction materials and $2,500 for removal of the tree are affirmed. Judgment is rendered in favor of Ms. Brister and against James D. Britt for an additional $9,168 as damages in trespass for removal of the concrete slab, for a total award of $12,668, with legal interest thereon from date of judicial demand until paid. Mr. Britt is cast for all costs.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
SHORTESS, J., concurs.
NOTES
[*] Judge Remy Chiasson, Retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.